UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                                                                      CRIMINAL NO. 3:14cr00087 HTW-FKB

JOHN LOUIS BLALACK
ROBERT HENRY RICE

**GOVERNMENT'S REPLY TO DEFENDANTS' RESPONSE TO
GOVERNMENT'S MOTION FOR A JURY QUESTIONNAIRE
AND INDIVIDUAL VOIR DIRE**

COMES NOW THE UNITED STATES, by and through the undersigned attorneys, and respectfully files its Reply to Defendants' Responses to Government's Motion for a Jury Questionnaire and Individual Voir Dire.

**I.
JURY QUESTIONNAIRE**

A.   **Defendant Blalack's Objections**

Defendant Blalack objects generally to the proposed questionnaire sent to the Court and counsel on November 19, 2014, arguing that various questions, especially those regarding civil rights, serve to "incite and inflame" the passions of the jury. Defendant cites various cases for the proposition that various categories of questions are prohibited. Defendant's reliance upon those cases is misplaced; rather, there is ample support for the use of a searching jury questionnaire as a valuable tool in a case such as this in order to best impanel a fair and impartial jury.

Defendant cites to *United States v. Barnes*, 604 F.2d 121 (139-43 (2nd Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed. 2d 260 (1980) and *United States v. Taylor*, 562

F.2d 1345, 1355 (2nd Cir. 1977) for the proposition that "educational backgrounds and whether prospective jurors had children" are sensitive areas beyond the proper scope of judicial inquiry in jury selection. Defendant Blalack mischaracterizes these cases. *Barnes* involved a multi-district, multi-defendant narcotics distribution case, in which the government's request for an anonymous jury was granted by the court. *Barnes*, 604 F.2d at 134. On appeal, defendants challenged the voir dire process because the district court refused to disclose petit jurors' identities, residence locales or ethnic backgrounds. *Id.* at 133. In finding that the jury selection process was sufficiently reliable, the Second Circuit specifically noted that jurors *were* asked about whether they had families, about the occupations of spouse and/or children, their educational background, and memberships in organized groups, clubs or fraternal organizations, health maters, exposure to and opinions regarding the criminal justice system, and questions regarding potential jurors' racial attitudes and experiences. Id. at 135-136. Thus, the *Barnes* court approvingly referred to the very type of inquiry to which Defendant Blalack objects. In *Taylor*, the defendant objected to the district court's failure to inquire into jurors' eductional backgrounds and information regarding jurors' children. *Taylor*, 562 F.2d at 1355. Emphasizing the district court's discretion in determining the appropriate questions to ask in voir dire, the *Taylor* court found that the failure to so inquire in a particular case did not establish an abuse of discretion. *Id.* However, neither *Taylor* nor any other case of which the government is aware stands for the position that such an inquiry would be improper.

Defendant Blalack's reliance upon *United States v. Workman*, 454 F.2d 1124, 1128 (9th Cir.) cert. denied 409 U.S. 887, 93.S.Ct. 138, 34 L.Ed. 102 (1972) and *Yarborough v. United States*, 230 F.2d 56, 63 (4th Cir. Cert denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956)

for the proposition that other "sensitive" areas are beyond the proper scope of judicial inquiry is also misplaced. The *Workman* court upheld the trial court's decision not to ask potential jurors questions in an assault on a police officer matter about such matters as white revolutionaries, the Seattle Liberty Front, the war in Southeast Asia, or "any other matter that unconsciously fights detachment from the mental processes of the average man." *Workman*, 454 F.2d at 1128. The *Yarborough* court upheld the district court's decision not to ask potential jurors in a failure to file income taxes case questions regarding their religious affiliations, when the jurors were "interrogated fully as to all matters which could affect their fitness to ser ve as jurors in the cause. It is well settled that what questions shall be asked of jurors on the voir dire is a mater resting in the sound discretion of the trial judge. . ." *Yarborough*, 230 F.2d at 63. Thus, both cases stand merely for the proposition that the district court's discretion in the questions it asks jurors is broad. They do not stand for the proposition that any area of inquiry is prohibited.

Defendant Blalack makes the blanket statement that the questionnaire "violates privacy rights," and that the right to privacy precludes "offensive" questions from being asked of potential jurors. Defendant Blalack cites no caselaw for the proposition that jurors have a privacy right to not answer proper questions on voir dire, and he fails to explain how any of the questions on the proposed questionnaire are offensive, or how they would violate "privacy rights." Defendant Blalack cites to *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 1422, 128 L.Ed. 89 (1994) and *Shaw v. Hahn*, 56 F.3d 1128, 1130 (9th Cir. 1995) for the proposition that jurors maintain equal protection rights during jury selection. Those cases stand respectively  for the propositions that litigants cannot discriminate against jurors based upon gender or race. However, since the government is not proposing that the questionnaire be

3

administered on the basis of gender or race, these cases are of no relevance to Defendant's objections to the jury questionnaire at issue.

Finally, Defendant Blalack's reliance upon *United States v. Contrereas-Castro*, 825 F.2d 185, 187 (9th Cir. 1987) for the proposition that it is improper to ask a potential juror about the weight he or she might assign to the testimony of a law enforcement witness flatly misstates the case. Rather, the *Contreras-Castro* court held it to be reversible error *not* to ask such a question upon request. *Id.*

Thus, Defendant Blalack has cited no accurate authority for any of his arguments against the questionnaire, leaving unsupported, unexplained blanket assertions that the questionnaire is discriminatory, prejudicial, constitutes an invasion of privacy, an invasion of moral beliefs and religious beliefs, etc. Defendant Blalack fails to note that there is ample authority for the use of such a questionnaire in cases such of this, which are factually complex, involve sensitive racial matters, and have received substantial media attention.

Indeed, a substantially similar questionnaire has been used at least twice in this district, in high profile, death-resulting, racially motivated assaults. *See United States v. Ernest Avants*, Criminal No. 5:00cr15; *United States v. James Ford Seale*, Criminal No. 3:07cr9. Regarding the defendant's complaints that "questions relating to civil rights," serve to "incite and inflame" potential jurors, the government notes that the Supreme Court has held that in matters in which racial issues are "inextricably bound up with the conduct of the trial," the court's inquiry must include questioning specifically directed to racial prejudice or bias to meet the constitutional requirement that an impartial jury be impaneled. *Ristaino v. Ross*, 424 U.S. 589, 597, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976); *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35

L.Ed.2d 46 (1973). In *United States v. Quinones*, 511 F.3d 289 (2nd Cir. 2007), the court noted that district courts "routinely" utilize questionnaires to facilitate voir dire in a number of circumstances, such as when a large number of jurors must be screened, and where there has been extensive pre-trial publicity. Id. at 299 (internal citations omitted). Significantly, in *United States v. Skilling*, 561 U.S. 358, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010), the Supreme Court put its stamp of imprimitur upon comprehensive jury questionnaires in high profile cases, approvingly referring to the 77 item questionnaire (and the district court's individual voir dire) as successful tools in securing an impartial jury.

As courts have uniformly held, the questioning of jurors is within the Court's broad discretion, and given the factual complexity, inextricable racial issues, and high publicity attendant upon the instant case, the Court should exercise its discretion to utilize the valuable tool of a comprehensive jury questionnaire to aid in voir dire and best ensure a fair and impartial jury. Defendant Blalack's mischaracterization of caselaw, unsupported assertions, and failure to address counterveiling authority fail to advance his position that such an exercise of discretion would be improper.

**B.     Defendant Rice's Objections**

Defendant Rice also objects to the government's motion for a questionnaire. His articulated reasons center on allegations that circulating and reviewing the questionnaires will be time-consuming, and will deny the parties valuable information that would be acquired by observing the demeanor of jurors as they orally respond to questions. Finally, he makes non-specific objections to questions as being "unduly intrusive."

The government notes that an impartial jury as guaranteed by the Sixth Amendment is a fundamental right, and the questioning of prospective jurors is critical to preserving that right. *Rosales-Lopez v. United States*, 451 U.S. 182, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981). And where racial issues are at play, the Supreme Court has noted that thorough inquiry is mandated, because "it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred." *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931).

In the instant case, the government's proposed questionnaire is to ferret out prejudice and bias in a non-confrontational manner in a forum in which jurors are more apt to be forthcoming. The government believes that is worth the investiture of time and thought.

The government notes at the outset that in the vast majority of cases in which the use or non-use of a jury questionnaire was at issue, the suggested questionnaire was either at the behest of the defendant, or was jointly recommended by the defendant and the government. The government is baffled by the position that either defendant would be harmed by the gathering of more information regarding jurors' backgrounds. The government is equally puzzled by the argument that in this case, which involves racially motivated assaults culminating in a death had a national impact, and in which defendant Blalack is facing a potential sentence of life, and defendant Rice is facing a potential sentence of 30 years, it is too time-consuming to circulate and review juror questionnaires as a tool to impanel an impartial jury. The government further notes that precedent in this district - indeed, before this Court - establishes that the process is both manageable and useful. See, *See United States v. James Ford Seale*, Criminal No.

3:07cr9, *United States v. Ernest Avants*, Criminal No. 5:00cr15, *United States v. Melton*, 2009 WL 902021, *3.

Defendant Rice fails to specify the questions which he believes to be unduly intrusive; however, the government believes that the questions submitted, which are substantially similar to those previously used in similar cases in this district, are appropriate.

## II
## INDIVIDUAL VOIR DIRE

Defendant Blalack states an objection to the government's motion for individual voir dire, but makes no argument. Defendant Rice did not oppose the government's motion for voir dire. The government notes that the Fifth Circuit has a strong preference for individual voir dire in cases involving substantial pretrial publicity. In *United States v. Davis*, 583 F.2d 190 (5th Cir. 1978), the Court reversed the defendant's conviction in a case which had received substantial pretrial publicity because the district court's voir dire was insufficient. In so doing, the *Davis* court approvingly cited the American Bar Association's Standards Relating to Fair Trial and Free Press, recommending that "the district court examine each juror individually and out of the presence of other jurors to determine what he heard or read and how it has affected his attitudes towards the trial." *Id.* at 196. The *Davis* court stated that although separate examination of jurors is "not necessarily required," it is "preferable." In *Calley v. Callaway*, 519 F.2d 184, 208-09 (5th Cir. 1975)(en banc), the Court praised the district court's "searching and sensitively conducted" individual voir dire, outside the presence of the other jurors, in accordance with the ABA Standards. In *United States v. Schrimsher*, 493 F.2d 848, 854 (5th Cir. 1974), in assessing whether the district court's separate questioning of each juror who read a

particular article, in the presence of other jurors, constituted reversible error, the Court emphasized, "The safer practice in situations involving possible prejudice from newspapers or other sources is to interrogate each juror separately and out of the presence of the other jurors." In discussing the parameters of appropriate voir dire when jurors had been exposed to potentially prejudicial pretrial publicity, the Court held that a trial judge has a duty to independently assess the impartiality of the jurors. *Id.* at 196.

Additionally in this case, in order to protect against bias, the venire will need to be questioned regarding the sensitive issue of attitudes about race and racism. "The test for determining whether a court has adequately questioned prospective jurors regarding bias is whether 'the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present.'" *United States v. Greer*, 968 F.2d 433, 435 (5th Cir. 1992) (quoting *United States v. Samiento-Rozo*, 676 F.2d 146, 148 (5th Cir. 1982). Individuals are understandably loathe to admit to biases in a public forum. In order to encourage candid, forthright responses from potential jurors, they should be questioned individually.

Because of the publicity this case has engendered and because the case is seeped in issues of race and racism, a thorough jury questionnaire and searching, sensitive individual voir dire are the best tools to create a reasonable assurance that prejudice will be discovered if present.

## CONCLUSION

The instant case is factually and legally complex, steeped in racial issues, and has received significant media attention. For these reasons, this Court should exercise its discretion

to use the valuable tools of a comprehensive juror questionnaire and individual voir dire to best ensure that a fair and impartial jury is impaneled.

Respectfully submitted,

GREGORY K. DAVIS
United States Attorney

By:

s/ Glenda R. Haynes
Glenda R. Haynes
Assistant United States Attorney
MS Bar # 2132

VANITA GUPTA
Acting Assistant Attorney General
United States Department of Justice
Civil Rights Division

By:

s/ Paige M. Fitzgerald
Paige M. Fitzgerald
Deputy Chief
CA Bar # 171027

s/ Sheldon L. Beer
Sheldon L. Beer
Trial Attorney
MA Bar# 661165

## CERTIFICATE OF SERVICE

I, Glenda R. Haynes, hereby certify that on December 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the Electronic Case Filing system (ECF), which served to send notification of this filing to counsels of record.

This the 10th day of December, 2014.

                                                             s/Glenda R. Haynes
                                                 GLENDA R. HAYNES
                                                 Assistant U.S. Attorney